James A. **TURNER**

v.

**BLUE RIBBON WHOLESALE COMPANY, Inc.**

Civ. A. No. 6118.

United States District Court
N. D. Georgia,
Atlanta Division.

Sept. 22, 1958.

Smith, Field, Doremus & Ringel, Atlanta, Ga., for plaintiff.

Calhoun & Calhoun, Atlanta, Ga., for defendant.

SLOAN, District Judge.

Plaintiff in the above complaint seeks to recover alleged unpaid minimum wages and unpaid overtime compensation in the amount of $2,249.21, an additional amount as liquidated damages and a reasonable attorney's fee pursuant to provisions of the Fair Labor Standards Act of 1938, as amended, 29 U.S.C.A. § 201 et seq.

Plaintiff alleges that defendant is a corporation organized and existing by virtue of the laws of Georgia, and at all times material was engaged at a specified address in the City of Atlanta, Georgia, in the purchasing, selling, dealing in and delivering of all manner and kinds of beer, wine, alcoholic and non-alcoholic beverages and related products, both wholesale and retail, for interstate commerce within the meaning of the Act, and that practically all of the goods handled by defendant during the period involved had been produced for interstate commerce, and had been sold, offered for transportation, transported and delivered in interstate commerce at defendant's place of business to various points outside the State of Georgia; that from April 6, 1955, to December 12, 1956, plaintiff was employed by defendant as Warehouse Superintendent, his duties consisting of supervision of loading and dispatching trucks, accounting for distribution of truck loads and maintenance of records of these activities, plaintiff also being responsible for the supervision and maintenance of defendant's warehouse; that for the period here involved, stated above, that plaintiff was employed for workweeks longer than forty hours and that defendant failed and refused to compensate him during such period for employment in excess of forty hours at rates not less than one and one-half times the regular rates at which he had been employed as required by § 7 of the Act; that during such period plaintiff was employed for periods varying from forty to seventy-five hours each week and that defendant paid plaintiff therefor at the rate of $65 for a forty hour week "or one dollar sixty-two and one-half cents ($1.62½) per hour for the first forty hours of each week, and for hours in excess of forty hours per week, defendant paid plaintiff at the rate of eighty-two (82¢) per hour", plaintiff alleging and contending that he should have been paid for each hour of work in excess of forty hours per week one and one-half times his regular rate of $1.62½, or the rate of $2.44 for each such overtime hour. Plaintiff alleges that accordingly he was underpaid the sum of $1.62 for each hour worked in excess of forty in each such workweek or the sum of $2,249.21 for which he prays judgment, plus the liquidated damages and attorney's fees above referred to.

The defendant has filed its answer to the complaint and has also filed a motion for summary judgment.

The grounds of defendant's motion for summary judgment are:

1. The allegations of the complaint "fail to establish a genuine issue as to a material fact in controversy sufficient to charge defendant with liability."

2. That the sworn statements of plaintiff in his deposition taken subsequent to the filing of the complaint, "directly contradict and refute the unsworn and unsupported allegations" of the complaint, such statements in plaintiff's deposition "serving to defeat the legal basis for plaintiff's claim and dissolving any possible issue of fact."

3. That the affidavits submitted by defendant in support of the motion "confirmed and verified by plaintiff's deposition," clearly show "no legal liability on the part of defendant nor any triable issue exists."

4. For "other reasons apparent of record."

Defendant's motion for summary judgment is now properly before the Court for determination under the Local Rules of this Court.

From the affidavits submitted by defendant in support of the motion, the documents attached thereto, and plaintiff's deposition, it appears:

Plaintiff had had an application with the Georgia State Employment Service for four or five months and was instructed to go out and talk with Mr. John Stiga who was defendant's Sales Manager, plaintiff being told by such employment, service that the job would pay $70 a week; plaintiff went out and talked to Mr. Stiga and was told by him to come back the following Wednesday and at that time he was employed by Mr. Stiga as Warehouse Manager for defendant and went to work for $65 a week. Plaintiff did not have any conversation with Mr. Stiga about his hours but after working two days did talk to Mr. Hooper, who was at that time defendant's bookkeeper, and told him he was working late at night and wasn't getting paid for it and that later on he discussed the matter with other bookkeepers of defendant who had taken Mr. Hooper's place.

In the affidavit of John Stiga, the affiant states, among other things, that he was employed as Sales Manager for defendant and in such capacity employed plaintiff on or about July 29, 1954, to work in the capacity of Warehouse Manager for defendant at a salary of $65 per week, the affiant at such time advising defendant's bookkeeper, Elvis A. Hooper, that plaintiff had been so employed at a salary of $65 a week; that affiant told plaintiff he would be in charge of the warehouse, would hire and fire warehouse help, would have to work every other Saturday and would be responsible for inventory; that during the course of his employment that Mr. Turner requested a raise from affiant a time or two but that affiant never authorized any further change in his employment and plaintiff never did complain to affiant that he was not paid "according to our agreement."

In the affidavit of Elvis Hooper the affiant deposes that he was employed as office manager and accountant by defendant at the time plaintiff was employed by Mr. John Stiga, during the absence of Mr. Ed Pierce, on or about July 29, 1954, as Warehouse Manager and that Mr. Stiga informed affiant that plaintiff's salary was to be $65 per week "based on a variable workweek" and that affiant in turn explained to plaintiff the basis for his compensation "which would be a variable workweek in effect according to the regulations of the Wage and Hour Division"; that affiant informed plaintiff of the necessity of punching the clock "so that accurate hours might be kept in order that he might be compensated for his overtime", and that affiant gave plaintiff an example of how his overtime would be determined "even taking the calculator and dividing out an example of so many hours" and that plaintiff "understood fully about how his overtime would be compensated for"; that affiant "took the $65.00 weekly wage and divided into it the number of hours actually worked that week and got a dollar figure; his overtime would be 50% of his hourly pay for that week on this basis"; that affiant explained to plaintiff that his hourly rate would vary each week due to the fact that the hours worked varied each week and that plaintiff "was employed for a full week's work and not $65.00 for 40 hours worked"; that the person who preceded plaintiff was employed for $75 a week based on a variable workweek computed in the same manner as that described for plaintiff; that it was the policy of defendant to compensate its managerial employees who were in position to control their own hours "on the variable wage basis" and that those employees not of a managerial character or who were in a sales capacity were compensated either on commission basis or on an hourly basis; that the employees paid on a variable wage plan consisted of the office manager-account-

ant, warehouse manager and assistant bookkeeper; that deponent left the employment of defendant on or about August 13, 1954.

In the affidavit of Joseph L. Speer the affiant states that he was employed by defendant as office manager for the workweek ending March 2, 1955, and was so employed by Mr. Ed Pierce at a salary of $75 per week, replacing one Paul Slaughter who had been previously employed in such position by defendant; that at the time affiant started to work for defendant and started to preparing its payrolls he was instructed that plaintiff's "payroll agreement was $65.00 per week for all hours worked and that he was to receive additional compensation for overtime at one-half of his hourly rate for the hours worked that week" and that the entry on defendant's compensation record for plaintiff of "57½¢ o. t." appearing on several of such records from March 2, 1955, to and including December 12, 1956, were entered by affiant "and apparently was a mistake (and is known to be now) in that I used the previous week's overtime computation which was 57½¢ per hour and made the entry accordingly"; that for the workweek ending February 15, 1956, affiant "figured back and refigured the 57½¢ per hour and came up with 80¢ per hour overtime compensation for plaintiff" and that affiant made entries accordingly at 80¢ per hour overtime until plaintiff left the company; that affiant did not receive any instructions from Mr. Ed Pierce and did not recall any conversations with Mr. John Stiga "concerning an increase in compensation" for plaintiff and that the only conversation affiant had concerning compensation was with Mr. John Stiga with reference to affiant's own compensation in which he asked Mr. Stiga to intervene with Mr. Pierce for affiant "for a raise" and that Mr. Stiga came back and told affiant that Mr. Pierce had granted affiant a raise of $5 per week; that in affiant's opinion Mr. Stiga did not have authority to raise the compensation of affiant or plaintiff; that the compensa-

tion records of defendant from the time of affiant's employment to and including December 12, 1956, were prepared by affiant or under his supervision and were kept and maintained in defendant's office and that plaintiff was in charge of defendant's warehouse, supervised all "strikers" as truckers were checking in, was in charge of all of the inventory and made daily reports to affiant.

In the affidavit of Mr. Edward Pierce the affiant deposes that he is Secretary-Treasurer of General Wholesale Beer Company of Atlanta, Georgia, formerly "and at all times mentioned herein" incorporated and doing business as Blue Ribbon Wholesale Co.; that affiant was directly responsible for the employment and supervision of all office and warehouse employees and is thoroughly familiar with the employment and payroll records of the company, particularly for the period of plaintiff's employment, and that affiant "in his capacity as administrative executive" is familiar with the employment and compensation record of plaintiff during his employment; that plaintiff was employed on or about July 29, 1954, by Mr. John Stiga, Sales Manager of defendant, during the absence of deponent at the rate of $65 per week for all hours worked during any week with overtime to be computed on a variable workweek basis; that upon affiant's return that he explained to plaintiff the terms of his employment, particularly "the variable workweek" upon which plaintiff "and other employees of the company were employed and compensated"; that at the time of plaintiff's employment Elvis Hooper was the bookkeeper for defendant and that Mr. Hooper correctly computed and made entries of plaintiff's compensation and that Mr. Hooper thoroughly explained to plaintiff "the basis for computation of his overtime compensation"; that Elvis Hooper was replaced as bookkeeper by Paul Slaughter several weeks after plaintiff's employment and that Mr. Slaughter correctly computed the compensation due plaintiff "in strict accordance with the variable workweek on which Mr. Turner

was employed" and did so through February 23, 1955; that Mr. Slaughter was replaced by Joe Speer during the workweek of February 13, 1955, and that the variable workweek method of computation and compensation was explained to Mr. Speer by deponent "but he apparently failed to understand it" and for the payroll period of March 2, 1955, Mr. Speer erroneously applied the same overtime compensation for plaintiff that had been computed for the week ending February 23, 1955, of $.575 per hour for hours worked in excess of forty and that such rate was erroneously applied for each payroll period from March 2, 1955, through February 8, 1956, and that this erroneous computation resulted in small overpayments to plaintiff; that for the workweek ending February 15, 1956, that Joe Speer, without authority from any official of defendant, changed his overtime rate from $.575 per hour, which had been erroneously paid, "to the arbitrary amount of $.80 per hour" and thereafter applied the incorrect figure of $.80 per hour for overtime through the payroll period ending December 12, 1956, "the week ending date preceding termination of employment" of plaintiff and that this "erroneous application of $.80 per hour resulted in general consistent small over-payments to Turner"; that the erroneous computation and application of Joe Speer were unknown and undetected by officials of defendant for the reason that they affected plaintiff's weekly compensation only to a slight degree and that such errors remained unknown to defendant until after the termination of plaintiff's employment and receipt of notification of his claim for alleged unpaid overtime compensation by the Wage and Hour Division, U. S. Department of Labor, "which Division, to the best of deponent's knowledge, has abandoned said claim as being without legal justification." Deponent states that he has made a complete compilation of the payroll records of plaintiff showing "the aforesaid errors and corrected calculations" which is attached as an exhibit to his affidavit. This exhibit purports to show "the entire employment history" of plaintiff with defendant, the total number of hours worked; the correct straight time hourly rate; overtime hours worked in excess of 40; correct overtime rate; correct overtime earnings; correct gross earnings; incorrect overtime rate erroneously applied; incorrect overtime earnings paid; incorrect gross weekly earnings paid; overtime refundable to the company (resulting generally from application of erroneous overtime rate and occasionally from mathematical errors in computation); underpayment (resulting generally from application of erroneous overtime rate and occasionally from mathematical errors in computation); total underpayment; total overpayment and resulting net overpayment, for payroll periods not barred by statute of limitations beginning July 27, 1955, through December 12, 1956, showing a net overpayment of $101.04 for all hours worked on a variable workweek basis from July 27, 1955, through December 12, 1956. Affiant deposes that at no time during plaintiff's employment did the defendant through any of its officers "vary, alter, deviate from or change the terms and conditions" of plaintiff's employment from a variable workweek or base the computation of his overtime pay on any method or provision of law other than that of the variable workweek and that plaintiff was compensated at all times during his employment by defendant on a variable workweek basis as provided by law, etc., and that the application of such variable workweek method of compensation for the position held by plaintiff was effected by defendant following instructions to deponent by the Atlanta Office of the Wage and Hour Division, U. S. Department of Labor.

Section 778.3(5) of the Regulations issued by the Administrator [29 U.S.C. App. (Cum. p. p.) § 778.3(5)] provides that where an employee earns a weekly salary with the understanding that such salary is to cover all hours worked, and where such employee's hours of work fluctuate from week to week, his regular

rate of pay will vary from week to week and will be the average hourly rate each week, and that since the employee has already received straight time compensation on a salary basis for all hours worked, only additional half-time is due as overtime compensation for hours worked in excess of forty.

From the record before the Court it appears, without dispute, that plaintiff here was employed by defendant at a salary of $65 per week for all hours worked and that he "was compensated under the provisions of the above Regulation for all overtime worked." It thus appears that there is no genuine issue of material fact in controversy in this case, and it is therefore

Ordered that defendant's motion for summary judgment be, and the same is hereby sustained. Such judgment may be prepared and presented.